UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PABLO FERNANDEZ,                                    :

                Petitioner,                 :            00 Civ. 7601 (KMW) (AJP)

          -against-                        :            **REPORT AND RECOMMENDATION**

CHRISTOPHER ARTUZ, et al.,                          :

              Respondents.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Chief Magistrate Judge:**

**To the Honorable Kimba M. Wood, United States District Judge:**


        Petitioner Pablo Fernandez, then pro se, brought this habeas petition on August 14, 2000.  (Dkt. No. 2: Pet.)  After a long procedural history (discussed below), Fernandez's new pro bono counsel seeks to stay the petition's exhausted claims and dismiss without prejudice his unexhausted <u>Brady</u> v. <u>Maryland</u> claim pending exhaustion of the claims he has raised and are pending in state court under C.P.L. § 440.  (Dkt. No. 38: Motion; <u>see also</u> Dkt. No. 39: Fernandez Stay Br.; Dkt. No. 45: Fernandez Reply Stay Br.; Dkt. Nos. 40 & 46: Cromartie Affs.)  The State opposes the motion.  (Dkt. No. 43: State Br.)

        For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

### Prior Federal Court Proceedings

Petitioner Fernandez's pro se habeas petition (Dkt. No. 2), dated August 14, 2000, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his June 21, 1996 conviction after a jury trial in Supreme Court, New York County, of second degree murder and sentence of twenty-five years to life imprisonment. (Dkt. No. 2: Pet. ¶¶ 1-6.) See also People v. Fernandez, 249 A.D.2d 3, 3, 670 N.Y.S.2d 840, 841 (1st Dep't), appeal denied, 92 N.Y.2d 897, 680 N.Y.S.2d 60 (1998).

Fernandez's petition raises seven habeas grounds: (1) the trial court's reasonable doubt jury charge shifted the burden of proof (Pet. ¶ 12, Point I); (2) a Brady violation (id. Point II); (3) prosecutorial misconduct (id. Point III); (4) prejudicial comments by the trial judge (id. Point IV); (5) admission of hearsay (id. Point V); (6) denial of the right to present a defense (id. Point VI); and (7) ineffective assistance of appellate counsel in failing to include issues in the application for leave to appeal to the New York Court of Appeals (id. Point VII).

The State moved to dismiss Fernandez's habeas petition as barred by the AEDPA's one year statute of limitations. (See Dkt. Nos. 11, 13, 17.) Judge Wood referred the case to me, and on May 15, 2001, I issued a Report and Recommendation that the petition be dismissed as time barred, holding that the "prison mailbox rule" should not apply to determine when an inmate filed a coram nobis petition with the Appellate Division. Fernandez v. Artuz, 00 Civ. 7601, 2001 WL 506889 (S.D.N.Y. May 15, 2001) (Peck, M.J.).

On November 20, 2001, Judge Wood disagreed, holding that the prison mailbox rule should apply to determine when a coram nobis petition was filed for purposes of AEDPA tolling, and therefore denied the State's motion to dismiss. Fernandez v. Artuz, 175 F. Supp. 2d 682 (S.D.N.Y. 2001) (Wood, D.J.).

The State was granted leave to file an interlocutory appeal to the Second Circuit, which affirmed Judge Wood's decision on March 17, 2005. Fernandez v. Artuz, 402 F.3d 111 (2d Cir. 2005). The State applied for certiorari to the Supreme Court, which denied certiorari on October 3, 2005. Haponik v. Fernandez, 126 S. Ct. 79 (2005) (denying certiorari).

At that point, before the State's response to Fernandez's petition was due, Fernandez's new pro bono counsel moved to stay the exhausted claims and dismiss the unexhausted Brady claim to allow exhaustion of that claim (and potentially other claims) in state court. (See page 2 above.)

**The _Brady_ Claim in the Petition**

Fernandez's counsel seeks dismissal without prejudice of a single claim in the petition, the second habeas claim, which raises a Brady claim. (Pet. ¶ 12 Point II.) The Brady claim currently in the petition is based on the prosecution's failure to disclose that Officer Melino was being investigated (and was arrested shortly after Fernandez's trial) for selling drugs in 1991 or 1992, before he became a police officer. (Pet. ¶ 12 Point II.) See People v. Fernandez, 249 A.D.2d 3, 3-7, 670 N.Y.S.2d 840, 841-44 (1st Dep't 1998). The Brady claim was raised before the trial judge (Leslie Crocker Snyder) via a C.P.L. § 330.30 motion, denied by her and by the First Department. Id.

In discussing the <u>Brady</u> claim in the pro se habeas petition, Fernandez referred to the importance of Officer Melino's testimony because of his role in connection with the witnesses' photographic and lineup identifications of Fernandez and Officer Melino's "debriefing" of all the trial witnesses against Fernandez. (Pet. ¶ 12, Point II, last paragraph.)[1]

**Fernandez Files a C.P.L. § 440 Motion in State Court While His Federal Habeas Petition is Pending**

While Fernandez's habeas petition was pending in the Second Circuit, on April 22, 2003, his attorney David Samel (not his current federal court pro bono counsel) filed a C.P.L. § 440 motion in state court to vacate Fernandez's conviction based on, <u>inter alia</u>, newly discovered evidence. (Dkt. No. 40: Cromartie Aff. Ex. 1: Samel § 440 Aff.; <u>see also</u> Dkt. No. 39: Fernandez

---

[1]     That paragraph states:

> Justice Synder mischaracterized [Officer] Albert Melino's testimony as "largely collateral" to the issues at trial and completely failed to reckon with the core issue of Melino's pivotal role in the photographic and lineup identifications by both Rosario brothers, as well as his role in the "discovery" or debriefing of virtually every other witness who claimed that Pablo Fernandez committed the crime or was present when it was committed. The fact that Melino "did not testify to seeing the defendant commit the murders" is simply not the test of materiality. There was evidence that conflicted with the descriptions given by the identifying witnesses, and George Rosario's testimony that he went to a lineup on July 20, 1995 with Officer Melino and that Melino had taken him to the viewing room – testimony which directly contradicted the claims by Detective Mshar and Officer Melino that George Rosario had been brought to the lineup room by Detective Garcia, and not Melino, certainly supported the defense theory of police interference. The outcome of this case turned on whether the jury believed that the identifications were reliable and not the product of Melino's suggestion or intervention, and the jury certainly should have been made aware of the fact that Albert Melino was an imposter who had been living what was, in effect, a double life.

Stay Br. at 6.)  The C.P.L. § 440 motion was supported by affidavits from, <u>inter alia</u>, two eyewitnesses who had identified Fernandez at trial as the shooter, recanting their trial testimony and stating that their identification of Fernandez was the product of Officer Melino's misconduct, and a third person, the second victim of the shooting, who had not been found by the police at the time of the trial and who stated that Fernandez was not the shooter.  (Fernandez Stay Br. at 6; Cromartie Aff. Ex. 1: Samel Aff. at pp. 31-39 & Exs. B, C, D: Hickliff Rosario, George Rosario & Henry Gomez Affs.)  Fernandez's C.P.L. § 440 motion also claims "that his right to due process was violated by P. O. Melino's coercion of witness testimony, illegally fabricating evidence and intentionally misleading at least two witnesses who identified Mr. Fernandz at trial."  (Fernandez Stay Br. at 6, citing Samel Aff. at p. 34.)

On June 10, 2004, Justice Bruce Allen ordered a hearing to be held to determine the credibility of the Rosarios and Gomez.  (Cromartie Aff. ¶ 3; Fernandez Stay Br. at 6.)  That hearing did not conclude until November 10, 2005, but no decision has yet been rendered.  (Dkt. No. 46: Cromartie 12/15/05 Aff. ¶ 5 & Ex. A: Samel 12/13/0Aff. at p. 2; <u>see</u> Dkt. No. 45: Fernandez Reply Stay Br. at 4.)

## ANALYSIS

## I.   LEGAL AND FACTUAL BACKGROUND

### A.   The *Zarvela* and *Rhines* Decisions

In Zarvela v. Artuz, 254 F.3d 374 (2d Cir.), cert. denied, 234 U.S. 1015, 122 S. Ct. 506 (2001), the Second Circuit established procedures for the handling of "mixed" habeas petitions (i.e., containing both exhausted and unexhausted claims) in light of the AEDPA's one year limitations period. Zarvela held that a district court has discretion to dismiss the unexhausted claims and stay the exhausted claims, conditioned on prompt filing of state collateral proceedings (normally 30 days) and prompt return to federal court after the conclusion of the state proceedings (again, normally 30 days). Zarvela v. Artuz, 254 F.3d at 380-82.

After Zarvela, the Supreme Court addressed the same issue in 2005 and reached a similar, but not identical, result. Rhines v. Weber, 125 S. Ct. 1528, 1535 (2005). The Supreme Court held:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. Though, generally, a prisoner's "principal interest . . . is in obtaining speedy federal relief on his claims," Lundy, supra, at 520, 102 S. Ct. 1198 (plurality opinion), not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might

deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. See, e.g., Zarvela, 254 F.3d at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. See id., at 380-381.

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

Rhines v. Weber, 125 S. Ct. at 1535 (citations omitted).

### B. Chronology of Fernandez's Discovery of Rosario's and Gomez's New Evidence

The State opposes Fernandez's motion, arguing that Fernandez fails Rhines "good cause" test, because of the delay – measured by the State from the time of trial – in obtaining affidavits from the Rosarios and Gomez.

In reply, Fernandez supplies the chronology of events that resulted in his 2003 C.P.L. § 440 motion, as follows:

In 2001, Fernandez's sister learned through an acquaintance that the Rosarios said that their trial testimony was not truthful. (Dkt. No. 46: Cromartie 12/15/05 Aff. Ex. B: Castillo Aff. at p. 1.) Fernandez's family hired a private investigator, Leslie Wolff, to investigate. (Castillo Aff. at p. 1; Cromartie 12/15/05 Aff. Ex. C: Wolff Aff. ¶ 1.) Investigator Wolff conducted tape recorded interviews of the Rosarios in October 2001. (Wolff Aff. ¶ 2.)[2/]

Fernandez's family hired David Samel in February 2002 to bring a C.P.L. § 440 motion. (Cromartie 12/15/05 Aff. Ex. A: Samel Aff. at p. 1; see Castillo Aff. at p. 1.) Fernandez's sister learned in September 2002 that Henry Gomez was the second shooting victim (at trial, the second shooting victim was believed to be "Eddie Serrano," who could not be located), and that based on a photograph of Fernandez, Gomez said that Fernandez was not the shooter. (Samel Aff. at p. 1; Castillo Aff. at p. 1.) Samel was finally able to obtain a sworn affidavit from Gomez in February 2003, and filed Fernandez's C.P.L. § 440 motion in April 2003. (Samel Aff. at pp. 1-2.)[3/]

Had the C.P.L. § 440 proceedings moved more expeditiously, they would have been resolved before the Second Circuit's March 17, 2005 decision or the Supreme Court's October 3, 2005 denial of certiorari. The § 440 proceedings, however, moved at a snail's pace. The prosecution did not respond to Fernandez's C.P.L. § 440 motion for nine months, until January 2004. (Samel Aff. at p. 2.) Justice Allen ordered an evidentiary hearing on the motion in June 2004, but for "a

---

[2/]    The Court notes that as of October 2001, this Court had recommended dismissal of Fernandez's habeas petition. (See page 2 above.)

[3/]    During this 2002-2003 period, Fernandez's habeas petition was before the Second Circuit on the State's interlocutory appeal. (See pages 2-3 above.)

variety of reasons," the evidentiary hearing did not conclude until November 2005.  (Samel Aff. at p. 2; Cromartie 12/15/05 Aff. ¶ 5.)

C.  **Application of _Rhines'_ Standard to Fernandez's Case**

As noted above, prior to <u>Rhines</u>, under the Second Circuit's <u>Zarvela</u> approach, stays were routinely granted, without need for any further showing.  (<u>See</u> Point I.A above.)  Thus, pre-<u>Rhines</u> cases do not shed any light on the issue before the Court.

Shortly after its decision in <u>Rhines</u>, the Supreme Court in <u>Pace</u> v. <u>Diuglielmo</u>, 125 S. Ct. 1807, 1813 (2005), mentioned in dicta one ground that would constitute "good cause" under the <u>Rhines</u> standard:  "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."  <u>Pace</u> v. <u>Diuglielmo</u>, 125 S. Ct. 1807, 1813-14 (2005).  District courts have relied on this dicta to find good cause where the petitioner filed a "protective" federal habeas petition where the petitioner was confused as to whether his claims were properly exhausted in state court.  <u>See</u>, <u>e.g.</u>, <u>Rhines</u> v. <u>Weber</u>, No. 00-5020, ___ F. Supp. 2d ___, 2005 WL 3466015 at *2-4 (D.S.D. Dec. 19, 2005); <u>Smith</u> v. <u>Wolfe</u>, No. 2:04-CV-1010, 2005 WL 2373431 at *6 (S.D. Ohio Sept. 27, 2005); <u>Menzies</u> v. <u>Friel</u>, No. 03 CV 0092, 2005 WL 2138653 at *2 (D. Utah Sept. 1, 2005); <u>Bartelli</u> v. <u>Wynder</u>, No. Civ. A. 04-CV-3817, 2005 WL 1155750 at *2-3 (E.D. Pa. May 12, 2005).

Because <u>Rhines</u> is less than a year old, there has been no further definition of "good cause" beyond that provided in <u>Pace</u>.  Several decisions by district courts within the Second Circuit have denied requests for a stay without prejudice to the petitioner submitting additional information

to show "good cause," but without shedding any light on what is meant by good cause. See, e.g., Bryant v. Greiner, 02 Civ. 6121, 2005 WL 3455789 at *2-3 (S.D.N.Y. Dec. 14, 2005); Bryant v. Greiner, 02 Civ. 6121, 2005 WL 3071476 at *2 (S.D.N.Y. Nov. 15, 2005); Knight v. Phillips, No. 05-CV-2749, 05-CV-2758, 2005 WL 2591830 at *1, 2-3 (E.D.N.Y. Oct. 13, 2005); Reyes v. Phillips, 02 Civ. 7319, 2005 WL 2173812 at *7 (S.D.N.Y. Sept. 6, 2005); Pinero v. Greiner, 01 Civ. 9991, 2005 WL 1606340 at *4 (S.D.N.Y. July 8, 2005).

Several Courts of Appeals have issued decisions on the Rhines issue, but they offer no guidance as to "good cause." In Akins v. Kenney, 410 F.3d 451, 456 (8th Cir. 2005), the Eighth Circuit remanded to the district court to allow the petitioner to demonstrate good cause. In Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005), the Ninth Circuit rejected the district court's "application of an 'extraordinary circumstances' standard [which] does not comport with the 'good cause' standard prescribed by Rhines."[4/] See also Thompson v. Secretary for Dep't of Corr., 425 F.3d 1364, 1365 (11th Cir. 2005) (remanding to district court for further findings under the Rhines factors); Banks v. Jackson, No. 03-1364, 149 Fed. Appx. 414, 420-22 (6th Cir. Aug. 31, 2005) (remanding to district court to make determinations in line with Rhines); Neville v. Dretke, 423 F.3d 474, 479 (5th Cir. 2005) (denying the stay because petitioner "offers neither good cause nor a potentially meritorious claim," without further explanation.).

_____

[4/]    An "unreported" Ninth Circuit decision, Barretto v. Giurbino, No. 04-55899, 150 Fed. Appx. 604, 605 (9th Cir. Sept. 16, 2005), held, without further explanation, that "[g]iven the potential merit of petitioner's unexhausted claim and his attempt to exhaust this claim in the state courts, we find 'good cause for his failure to exhaust.'" (quoting Rhines).

Due to the current lack of guidance on the "good cause" issue, a handful of district courts outside of this Circuit which have considered the issue of stay and abeyance post-Rhines have analogized the "good cause" standard with the showing of "cause" required to overcome a procedural bar. Compare, e.g., Johnson v. Sullivan, No. CV04-7923, 2006 WL 37037 at *3 (C.D. Cal. Jan. 4, 2006) ("'Cause' usually means some objective factor external to the petitioner which gave rise to the default. In this case, Petitioner has failed to demonstrate an external factor, not attributable to him, which provides 'good cause' for the failure to exhaust his state remedies. . . . Under the procedural default analogy, Petitioner's lack of legal knowledge is not 'cause' because it is not an objective factor external to petitioner which prevented compliance with the exhaustion requirement.") (citations omitted); Hernandez v. Sullivan, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005) (finding no "good cause" by looking to the case law on "cause" for procedural default and determining that petitioner "has not shown that his failure to exhaust his claims resulted from any external objective factor that cannot fairly be attributed to him."); with Bader v. Warden, No. Civ. 02-CV-508, 2005 WL 1528761 at *7 (D.N.H. June 29, 2005) (analogizing Rhines "good cause" to the "cause" needed to excuse procedural default, but also recognizing Pace confusion standard for cause), and with Rhines v. Weber, 2005 WL 3466015 at *3-4 (rejecting the analogy of "good cause" to "cause" for a procedural default because the concerns of comity and federalism present in the latter are not at issue in a situation involving the former wherein the court allows a state court to pass judgment on the theretofore unexhausted claims, and the Court opined "that the Supreme Court suggested a more expansive definition of 'good cause' in Pace and Rhines than the showing needed for 'cause' to excuse

a procedural default. . . . Permitting [petitioner] to return to state court to exhaust his remedies and present his ineffective assistance of counsel argument complies with the principles of comity and federalism that underlie the exhaustion doctrine. Furthermore, the exhaustion doctrine was not intended to unreasonably impair the petitioner's right to relief.") (citations omitted). Additionally, at least one district court has "simply require[d] a prima facie case that a justifiable, legitimate reason exists which warrants the delay of federal proceedings while exhaustion occurs." Briscoe v. Scribner, No. CIVS04-2175, 2005 WL 3500499 at *2 (E.D. Cal. Dec. 21, 2005).

This Court thus is left to apply the undefined Rhines "good cause" standard with little guidance from precedent.

The first factor that the Court looks to here is that both Fernandez's habeas petition and his C.P.L. § 440 motion were brought before Rhines changed the virtually automatic Zarvela stay standard. Fernandez could have made his stay application in April 2003, when he brought the C.P.L. § 440 motion in state court, but under Zarvela had no reason to do so. In addition, as noted above, in 2003 his federal habeas petition was pending before the Second Circuit on the State's interlocutory appeal seeking to have the petition dismissed as time barred.

Second, there is no evidence that Fernandez "engaged in intentionally dilatory litigation tactics," another factor in the Rhines analysis. Rhines v. Weber, 125 S. Ct. at 1535. This is a very important factor, in my view. Rhines involved an inmate on death row, and the Supreme Court specifically noted that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." Rhines v. Weber, 125

S. Ct. at 1535. On the other hand, for non-capital inmates like Fernandez, the faster their federal habeas proceedings (and any state collateral proceedings) are decided, the faster they could be released from prison, and thus ordinarily they have no reason to delay. See Rhines v. Weber, 125 S. Ct. at 1535. In most non-capital cases, mixed petitions are the result of "the procedural complexities confronting a prisoner who endeavors to exercise his statutory right to challenge a state court conviction by means of a petition to a federal district court for a writ of habeas corpus." Zarvela v. Artuz, 254 F.3d 374, 378 (2d Cir.), cert. denied, 534 U.S. 1015, 122 S. Ct. 506 (2001).

Indeed, three concurring Justices in Rhines suggested that dilatory tactics, rather than good cause, should be the test:

> I join the Court's opinion with one reservation, not doctrinal but practical. Instead of conditioning stay-and-abeyance on "good cause" for delay, ante, at 1535, I would simply hold the order unavailable on a demonstration of "intentionally dilatory litigation tactics," ante, at 1535. The trickiness of some exhaustion determinations promises to infect issues of good cause when a court finds a failure to exhaust; pro se petitioners (as most habeas petitioners are) do not come well trained to address such matters. I fear that threshold enquiries into good cause will give the district courts too much trouble to be worth the time; far better to wait for the alarm to sound when there is some indication that a petitioner is gaming the system.

Rhines v. Weber, 125 S. Ct. at 1536 (Justices Stevens, Ginsburg & Breyer, concurring). Moreover in Pace, albeit in dicta, the Supreme Court found "good cause" from the pro se petitioner's reasonable confusion about what was needed to exhaust his claims. (See page 9 above.)

Here, Fernandez did not engage in any dilatory tactics to "gam[e] the system." He filed his C.P.L. § 440 motion to exhaust his unexhausted claim – based on newly discovered

evidence[5] – before making his motion for a stay. As Zarvela demonstrated, in the more usual situation, the petitioner does not even bring the state collateral proceeding necessary to exhaust any unexhausted claim until after the federal stay motion is granted.

Moreover, this is not a case where the petitioner waited until after the State responded to the petition before seeking a stay, which might be a sign of a dilatory litigation practice. Had Fernandez's § 440 state proceedings not been delayed by the prosecution and other circumstances beyond Fernandez's control, his C.P.L. § 440 motion should have been decided before the October 2005 Supreme Court denial of certiorari in this case returned the petition to the Court's active docket. Fernandez's pro bono counsel brought the stay motion the month after certiorari was denied, i.e., in November 2005, and, in particular, before the State's time to respond to the petition on the merits.

In light of the absence of any evidence of intentionally dilatory litigation tactics, this Court, following the Pace dicta, believes that a lesser showing of "good cause" will suffice. Here, two identification witnesses have recanted their trial testimony and have provided sworn affidavits to that effect (see Dkt. No. 40: Cromartie Aff. Ex. 1: Samel C.P.L. § 440 Aff. Exs. B-C: Rosario Affs.), and the second shooting victim has been located and submitted an affidavit that Fernandez

---

[5]    Newly discovered evidence itself starts a new one year statute of limitations to run for claims based on such evidence. 28 U.S.C. § 2244(d)(1)(D) (one year limitation period runs "from the latest of . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). Here, the factual predicate arose no later that October 2001, when Fernandez's investigator obtained recorded interview statements from the Rosarios. (See page 8 above.) Because more than a year passed from that point to the April 2003 C.P.L. § 440 motion, which only at that point would toll the AEDPA limitations period, see 28 U.S.C. § 2244(d)(2), Fernandez cannot take advantage of the § 2244(d)(1) limitations period for newly discovered evidence.

was not the shooter. (Id. Ex. D: Gomez Aff.; see also Dkt. No. 46: Cromartie 12/15/05 Aff. Ex. A: Samel Aff. at p. 2: medical "examination showed that Mr. Gomez had bullet wound scars in precisely the same areas – the neck and left arm – that the second shooting victim was known to have been wounded. The People apparently have since abandoned any claim that Mr. Gomez was not the man who was shot and survived when Mr. Quintero was killed.") If these three witnesses' new statements are credible – a fact on which this Court now can express no view, and which is being determined by the § 440 court – then Fernandez may be innocent. As Judge Karas stated in a post-Rhines decision finding good cause for a stay:

> [T]he Court is aware that the new claims that Petitioner seeks to assert are predicated on facts which, if established, suggest Petitioner's innocence, and this Court approaches them with special care.

Clancy v. Phillips, 04 Civ. 4343, 2005 WL 1560485 at *3 (S.D.N.Y. July 1, 2005).

In summary, the Court finds that this petition was filed before Rhines; Fernandez did not engage in intentionally dilatory litigation tactics; his unexhausted claims are potentially meritorious and, if meritorious, suggest Fernandez's innocence; and because the unexhausted claim(s) are based on documented evidence discovered after Fernandez brought his habeas petition, the Court holds that Fernandez satisfies the Rhines "good faith" standard. Accordingly, Fernandez's motion to dismiss the unexhausted second (Brady) habeas claim is granted and the remainder of the petition stayed, subject to Fernandez's return to this Court within 30 days of the federal state court decision (including appeals) on his pending C.P.L. § 440 motion.

## II.  FERNANDEZ'S FURTHER APPLICATION FOR LEAVE TO AMEND THE PETITION AFTER EXHAUSTING STATE COURT REMEDIES IS GRANTED

Fernandez's motion "additionally seeks leave to file an amended petition pursuant to Rule 15 of the Federal Rules of Civil Procedure to reflect the outcome of the § 440.10 [motion] currently pending in state court, within thirty days after state court exhaustion is completed." (Dkt. No. 39: Fernandez Stay Br. at 10; accord, Dkt. No. 38: Notice of Motion.)

The State opposes amendment on the ground that any amendment would not "relate back" to the original date of the petition and therefore is untimely. (Dkt. No. 43: State Br. at 3.)

The Supreme Court clarified the standard for an amendment to a habeas petition to "relate back" to the date of the original petition this past summer in Mayle v. Felix, 125 S. Ct. 2562 (2005). The Supreme Court rejected the petitioner's argument that relation back was appropriate under Fed. R. Civ. P. 15(c) where the new claim relates to the same trial. Mayle v. Felix, 125 S. Ct. at 2572-74. The Supreme Court held that "[i]f claims asserted after the [AEDPA] one-year [limitation] period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." Mayle v. Felix, 125 S. Ct. at 2573-74. Rather, where "the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle v. Felix, 125 S. Ct. at 2574.

As discussed above, Fernandez's original petition raised a Brady claim based principally on the prosecution's failure to disclose that Officer Melino was being investigated for selling drugs. (See page 3 above.) Fernandez's original petition, however, was pro se and he did

refer to the importance of Officer Melino's testimony because of his role in connection with the witnesses' identification of Fernandez and Officer Melino's debriefing of all the trial witnesses. (See page 4 above.) The first part of the Brady claim, i.e., about Officer Melino's drug investigation, was exhausted. (See pages 3-4 above.) The only reason the Brady claim is unexhausted is because of the second part of the original claim, as buttressed at least by the pending § 440 motion as to the Rosarios' recantation. That issue is sufficiently factually related to the pro se Brady claim to allow relation back under the Mayle standard.[6]

## CONCLUSION

For the reasons set forth above, the Court dismisses Fernandez's second (Brady) claim without prejudice and stays the remainder of the petition, subject to Fernandez's return to this Court with a motion to amend within 30 days of the state court's final decision, including appeals, of his C.P.L. § 440 motion.[7]

---

[6] The Court does not need to, nor does it, rule at this time as to amendment regarding Gomez – the facts are not sufficiently developed – or any other new claim that Fernandez may make. Suffice it to say that he must file his motion to amend within 30 days of the state court's decision of his § 440 motion, and the State then can oppose any claims that are raised that, in the State's view, should not relate back. The Court cannot now predict what claims Fernandez may seek to raise.

[7] The parties also are directed to file copies of the trial level § 440 decision when it occurs, copies of appeal papers from the § 440 motion, etc., to keep the Court advised of the progress in state court.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:     New York, New York
          January 18, 2006

Respectfully submitted,

**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:    Dominick R. Cromartie, Esq.
            Nicole Beder, Esq.
            Judge Kimba M. Wood